IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

THIEN QUOC TRINH,

Petitioner,

vs.

STEVE FANNON,[1] in his official capacity as Warden, McCook Work Ethic Camp; DAVID EASTERWOOD, in his official capacity as Field Office Director, ICE Enforcement and Removal Operations, St. Paul Field Office; MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security; DAVID J. VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; and TODD BLANCHE, in his official capacity as Acting Attorney General of the United States;

Respondents.

**8:26CV369**

**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS UNDER § 2241 AND PETITIONER'S INTERIM MOTIONS FOR TEMPORARY RESTRAINING ORDERS AND PETITIONER'S MOTION FOR ORAL ARGUMENT**

This case is before the Court on the July 28, 2026, Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by Petitioner Thien Quoc Trinh. Filing 1. Trinh is a native of Vietnam who entered the United States as a refugee in 1984 and became a lawful permanent resident in 1985. Filing 1 at 4 (¶ 15). He is now facing removal after he was convicted of "two counts of home invasion robbery" in the State of California and sentenced "to 9 years prison on count one, and 6 years prison on count two to be served consecutively." Filing 27 at 3 (¶ 14). Trinh was released into the United States after he served his prison term, purportedly because the United States did not have an agreement with Vietnam to deport Vietnamese citizens such as Trinh to

[1] In response to an earlier Order, the State Respondent stated that Respondent Steve Fannon is no longer the acting warden of the McCook Detention Center/Work Ethic Camp and, as a result, is not a proper party to this case. Filing 22 at 2 (¶ 2). The State Respondent did not identify the new Warden or Acting Warden. Pursuant to Federal Rule of Civil Procedure 25(d), Steve Fannon's successor is automatically substituted as a party. Until the State Respondent identifies the successor by name, he or she will simply be identified as the State Respondent.

Vietnam. Filing 27 at 4 (¶ 18). The United States has now negotiated an agreement with Vietnam which allows the deportation of Trinh.

Trinh's Petition does not challenge his removal. Filing 1 at 3 (¶ 8). It also does not challenge his custody pending removal. *See* Filing 1 *passim*. Rather, his Petition challenges the denial of his request for a stay of his removal and the approval of his immediate removal by Immigration and Customs Enforcement (ICE). Filing 1 at 3 (¶ 8). Trinh contends that this action by ICE was "without the statutory prima facie process required for a pending U petition, without any reasoned explanation permitting review of statutory compliance, and contrary to operative classwide relief." Filing 1 at 3 (¶ 6); *see also* Filing 1 at 3 (¶ 8), 4 (¶ 14).

The "U petition" to which Trinh refers is a petition for a U visa that grants temporary lawful nonimmigrant status and work authorization to aliens if the United States Citizenship and Immigration Service (USCIS) determines that "the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" that has occurred in the United States and the alien meets certain other requirements. 8 U.S.C. § 1101(a)(15)(U)(i); *see also Rodriguez v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25CV84, 2025 WL 1295332, at *3 (D. Neb. May 5, 2025). The "prima facie process" to which Trinh refers is the part of 8 U.S.C. § 1227(d)(1) that provides for the Secretary of Homeland Security to determine "[i]f . . . an application for nonimmigrant status under subparagraph (T) or (U) of section 1101(a)(15) of this title filed for an alien in the United States sets forth a prima facie case for approval." 8 U.S.C. § 1227(d)(1). If the Secretary determines that the application does set forth a prima facie case for approval, "the Secretary may grant the alien an administrative stay of a final order of removal under section 1231(c)(2) of this title. . . ." *Id.* Similarly, 5 U.S.C. § 705, a provision of the Administrative Procedure Act (APA) states, "When an agency finds that justice so requires, it may

postpone the effective date of action taken by it, pending judicial review." 5 U.S.C. § 705. In *Immigration Center for Women and Children v. Noem*, No. 2:25-CV-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026) (*ICWC*), the court relied on § 705 to stay certain ICE policies as to putative class members facing removal pending the conclusion of the administrative review procedures. *ICWC*, 2026 WL 1455004, at *46.

The Court concludes that Trinh's claims based on alleged violations of § 1227(d)(1) and § 705, as purportedly enforced by *ICWC*, fall outside the scope of habeas relief under § 2241. Those claims do not challenge Trinh's detention and seek relief other than release from custody, so that they are not cognizable pursuant to § 2241. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." (emphasis in the original)); 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless [as applicable here] [h]e is in custody in violation of the Constitution or laws or treaties of the United States."). For these reasons, as set out in more detail below, Trinh's Petition for Writ of Habeas Corpus is denied.

On July 28, 2026, in addition to his Petition, Trinh filed an Emergency Motion for Temporary Restraining Order and Order to Show Cause (First Motion for TRO). Filing 2. On July 31, 2026, Trinh filed another Emergency Motion for a Temporary Restraining Order Barring Removal and for an Order Requiring Respondents to Disclose Petitioner's Custodial Status (Second Motion for TRO), Filing 16. These interim Motions for Temporary Restraining Orders are denied—among other reasons—because they are moot in light of Respondents' compliance with prior Orders of this Court to identify Trinh's location and custodians and the Court's disposition of Trinh's Petition in this ruling.

Trinh also filed a Motion for Oral Argument on August 7, 2026, requesting oral argument on his Petition and his pending Motions for Temporary Restraining Order. Filing 31. That Motion is also denied because the Court finds that oral argument is unnecessary.

Even if this Court were to twist Trinh's claims enough to interpret them to be cognizable under 28 U.S.C. § 2241, any such habeas claims would fail as a matter of law as well. This case strikes this Court as an effort to try to delay the inevitable. After Trinh's conviction for robbery in California, there was clear law allowing for Trinh's deportation. Although there might have been another avenue for Trinh to stay here under another administrative accommodation, Trinh has not been successful in that effort. Frankly, given the circumstances, it would be surprising to this Court if he had been successful in that effort. When a person is convicted of felonies in the United States while allowed to be here as a lawful permanent resident, there are consequences. This Court is aware of no legal or other impediment to Trinh's immediate deportation.

## I. INTRODUCTION

### A. Factual Background

The factual background here is drawn primarily from Trinh's Petition. It is then supplemented where appropriate with facts drawn from the documents attached to Trinh's Motions for TROs and documents attached to the Federal Respondents' return.[2]

[2] Federal Respondents are all but the Warden of the McCook Detention Center who is identified in this ruling as the State Respondent. One of the attachments to Federal Respondents' Return is a declaration by Deportation Officer Jarrett Venters, who is one of the officers "responsible for contact with the aliens who are in ICE custody at the McCook ICE IGSA Facility in McCook, NE." Filing 27 at 1 (¶ 2). DO Venters based his declaration "upon [his] professional knowledge, information obtained from other individuals employed by ICE, and information obtained from DHS records." Filing 27 at 2 (¶ 3). In his Reply, Trinh does not dispute any of DO Venters's statements. Filing 28. The State Respondent also filed a Return asserting in essence that he is only a nominal respondent as Trinh's physical custodian and taking no position on the substantive issues raised in the Petition. Filing 24 at 1–2.

*1. Trinh's Entry into the United States and Subsequent Status*

Trinh was admitted to the United States as a refuge at the age of two, became a lawful permanent resident in 1985, and has lived in Nebraska since 2005. Filing 1 at 1 (¶ 1). He alleges that he "is married to a United States citizen, is raising three children, owns a home, and has no family or community in Vietnam," and further that "[h]e has never returned [to Vietnam] and lacks fluency in Vietnamese." Filing 1 at 6 (¶ 31).

The Petition alleges,

> [Trinh] is a certified victim of the January 17, 1989 mass shooting at Cleveland Elementary School in Stockton, California. He was seven years old and present on the playground when five children were killed and thirty-one others were injured.

Filing 1 at 2 (¶ 2). This allegation is central to Trinh's contention that he is qualified for a U visa, which was created as part of the Victims of Trafficking and Violence Protection Act of 2000 and codified at 8 U.S.C. § 1101(a)(15)(U). *See Rodriguez v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25CV84, 2025 WL 1295332, at *3 (D. Neb. May 5, 2025);[3] *see also* Filing 1 at 5–6 (¶¶ 21–28) (providing more detail about the mass shooting incident, which Trinh alleges qualifies him for a U visa).

Trinh acknowledges only obliquely that he had felony charges in 1997. Filing 1 at 3 (¶ 7) (alleging, "The San Joaquin County District Attorney's Office has stated in writing that it is

---

[3] As this Court has explained,

> The U visa program grants temporary lawful nonimmigrant status and work authorization to aliens if USCIS determines "the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" that has occurred in the United States; "the alien ... possesses information concerning [that] criminal activity"; and "the alien ... has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting [that] criminal activity." 8 U.S.C. § 1101(a)(15)(U)(i). An immigrant seeks a U visa by filing an I-918 petition. Petition for U Nonimmigrant Status, USCIS, https://www.uscis.gov/I-918 (designating the U visa petition to be filed with USCIS as an "I-918 Petition for U Nonimmigrant Status."); 8 C.F.R. § 214.14(c)(1).

*Rodriguez*, 2025 WL 1295332, at *3.

agreeable to negotiating a new disposition of Petitioner's 1997 felony charges because of a violation of California Penal Code § 1473.7(a)(1) at the time of the original pleas," without identifying the charges); Filing 1 at 6 (¶ 30) (alleging that the 1997 conviction "arose from conduct at age sixteen" and reiterating that a new disposition pursuant to § 1473.7(a)(1) may be forthcoming, without identifying the charges).[4] Federal Respondents' declarant provides more information about Trinh's criminal conviction in 1997. He avers that "[o]n November 4, 1997, the Municipal Court in San Joaquin, CA, convicted petitioner for two counts of home invasion robbery and sentenced him to 9 years prison on count one, and 6 years prison on count two to be served consecutively." Filing 27 at 3 (¶ 14).

These criminal charges led to an order for Trinh's removal from the United States. Federal Respondents' declarant avers further,

> 15. On or about May 2002, the Immigration and Naturalization Service (INS) encountered and arrested Petitioner at the Solano State Prison in Vacaville, California; INS issued petitioner a Notice to Appear.
>
> 16. On July 1, 2002, an immigration judge in Eloy, AZ ordered petitioner removed from the United States to Vietnam.
>
> 17. On January 3, 2003, ICE/ERO released petitioner on an Order of Supervision because removal to Vietnam could not be effectuated by that time.

Filing 27 at 4 (¶¶ 15–17). Trinh never specifically acknowledges in his Petition that he was ordered removed to Vietnam on July 1, 2002, but he does allege that he was released on supervision on

[4] California Penal Code § 1473.7(a)(1) provides as follows:

> (a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons:
>
> > (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel.

Cal. Pen. Code § 1473.7(a)(1).

January 3, 2003. Filing 11 at 6 (¶ 29). He alleges further that he "complied [with the terms of release on supervision] for more than twenty-three years without a violation." Filing 1 at 6 (¶ 29).

*2. The Reinitiation of Trinh's Removal*

Trinh alleges that ICE revoked his release on supervision in June 2026 "because [ICE] concluded there was a significant likelihood of removal and was seeking a travel document for Vietnam." Filing 1 at 6 (¶ 29); *see also* Filing 27 at 4 (¶ 20) ("On June 2, 2026, ICE/ERO completed a Notice of Revocation of Release since there was significant likelihood of removal in the reasonably foreseeable future of Petitioner."). The reinitiation of Trinh's removal began earlier than that, however. On March 27, 2026, ICE Enforcement and Removal Operations (ERO) in Omaha, Nebraska, sent a travel document request to ICE Headquarters for Trinh because "the United States and Vietnam executed [a Memorandum of Understanding (MOU)], dated November 21, 2020, whereby Vietnam agreed to accept return of its citizens who arrived in the United States before July 12, 1995 and have been ordered removed, [so Trinh's] removal to Vietnam became more likely." Filing 27 at 4 (¶ 18).[5] The request for the travel document was then sent to the ICE Attaché for Vietnam for processing on April 1, 2026. Filing 27 at 4 (¶ 19). On June 2, 2026, ICE completed a Notice of Revocation of Release for Trinh. Filing 27 at 4 (¶ 20). The Notice was completed because "[t]hroughout the year of 2026, Vietnam had been issuing travel documents to Vietnamese citizens every few months." Filing 27 at 4 (¶ 20).

On June 3, 2026, ICE/ERO encountered and arrested Trinh during non-detained check-ins at the Omaha, Nebraska, ICE Office, at which time ICE/ERO served the Notice of Revocation of

[5] Federal Respondents represent "upon information and belief" that a redacted copy of the MOU is available at https://www.nguoi-viet.com/wp-content/uploads/2021/07/Vietnam-2020-MOU-redacted-1.pdf.

Release on Trinh. Filing 27 at 4 (¶ 21). Trinh alleges that he was then detained at the McCook Work Ethic Camp in McCook, Nebraska, until July 28, 2026. Filing 1 at 1 (¶ 1).

On July 21, 2026, the Vietnamese government issued Trinh's travel document. Filing 27 at 4 (¶ 22). Consequently, on July 24, 2026, ICE/ERO "allocated" Trinh on a removal charter flight from Alexandria, Louisianna, to Hanoi, Vietnam. Filing 27 at 4 (¶ 23). On July 25, 2026, ICE/ERO "allocated" Trinh on a transfer flight from Omaha, Nebraska, to Alexandria, Louisianna. Filing 27 at 4 (¶ 24). On July 28, 2026, in the very early morning hours, Trinh was transported from the detention facility in McCook to the Omaha ICE office. Filing 27 at 5 (¶ 26). ICE/ERO learned that the ICE international air operations (IAO) flight from Omaha to Minneapolis, Minnesota, would be delayed. Filing 27 at 5 (¶ 27). Nevertheless, on July 28, 2026, Trinh was flown to Alexandria, Louisianna, via Minneapolis, but his ICE IAO flight to Vietnam had departed approximately 30 minutes prior to Trinh's arrival in Alexandria. Filing 27 at 5 (¶¶ 28–29). ICE then flew Trinh from Alexandria to El Paso, Texas, to prepare his return to Omaha, and by 9:30 p.m., Trinh had arrived at the ERO El Paso Camp East Montana Facility in El Paso. Filing 27 at 5 (¶¶ 30–32).

On August 4, 2026, ICE flew Trinh from El Paso to Omaha, then transported him to the McCook ICE detention facility. Filing 27 at 5 (¶ 33). Trinh arrived back at the McCook facility at approximately 3:00 p.m. Filing 27 at 6 (¶ 34). Federal Respondents' declarant avers,

> Petitioner will remain detained at the McCook ICE IGSA facility in McCook, NE until another flight becomes available; whether that be a charter or commercial flight. But in any event ICE, does not plan to move Petitioner while this habeas action is pending.

Filing 27 at 6 (¶ 35).

*3. Trinh's U-Visa Petition and Request for Stay of Removal*

Because Trinh had been a victim in the 1989 mass shooting incident at the Cleveland Elementary School in Stockton, California—and presumably because Trinh was aware of his arrest

by ICE on June 3, 2026, and his anticipated removal—"[t]he Stockton Police Department signed his Form I-918, Supplement B, on July 9, 2026, certifying murder, attempted murder, and felonious assault [as crimes against Trinh] and confirming [Trinh's] helpfulness." Filing 1 at 2 (¶ 2).

Trinh's counsel completed and submitted Trinh's Form I-918 petition, Form I-192 application, Supplement B signed by the Stockton Police Department, a memorandum of law, and supporting evidence, exceeding one thousand pages all told. Filing 1 at 5 (¶ 24). Form I-918 is a Petition for U Nonimmigrant Status. Filing 2-3 at 3. Form I-192 is an Application for Advance Permission to Enter as a Nonimmigrant. Filing 2-3 at 14. Trinh's counsel emailed the complete filing and a request to expedite to United States Citizenship and Immigration Service (USCIS) on July 27, 2026, and the Petition alleges that the original packet was delivered to the designated USCIS lockbox on July 28, 2026, at 9:45 a.m. Arizona time. Filing 1 at 4 (¶ 25); Filing 1 at 2 (¶ 3). ICE had allegedly received advance notice and copies of Trinh's Form I-246 and U-visa materials on July 27. Filing 1 at 6 (¶ 26). Form I-246 is an Application for a Stay of Deportation or Removal. Filing 2-3 at 90. The I-246 was allegedly physically accepted on July 28, 2026, at approximately 9:45 a.m. Central Time. Filing 1 at 6 (¶ 26). The Petition alleges,

> On July 27, 2026, counsel provided ICE the Form I-246 packet and access to the complete U-visa filing and expressly requested that ICE hold removal. On July 28, 2026, local counsel physically submitted the Form I-246 at approximately 9:45 a.m. Central Time and subsequently provided ICE proof that USCIS had received the U-visa petition.

Filing 1 at 2 (¶ 4). Trinh's counsel allegedly thereafter supplied ICE with proof of delivery to USCIS and specifically invoked Trinh's membership in the class defined in *ICWC*, 2026 WL 1455004. Filing 1 at 6 (¶ 27).

Both DO Venters's Declaration and Federal Respondents' Return state that Trinh submitted an Application for Stay of Removal "on June 12, 2026, which was denied on July 27th

2026 for lack of compelling reasons." Filing 25 at 5; Filing 27 at 4–5 (¶ 25). No June 12, 2026, Application appears in the record, and Trinh's Petition makes no reference to such an Application for Stay of Removal dated June 12, 2026. Thus, references to such an Application on June 12, 2026, appear to be mistakes. Instead, the Petition identifies the Form I-246 packet prepared and "provided to ICE" on July 27, 2026, and "physically submitted" by local counsel on July 28, 2026. Filing 1 at 2 (¶ 4). Trinh explains in his Reply that the request for a stay giving rise to the challenged denial "is the one presented on July 27 and 28." Filing 28 at 11 (citing Filing 2-3 at 90 (I-246), Filing 2-3 at 120 (email), and Filing 2-3 at 124–26 (email with tracking information)).

The Petition alleges,

> ICE denied the stay and approved removal. The only communicated explanation was: "the Stay is denied and removal has been approved by ERO HQ." ICE did not identify a USCIS prima facie determination, a request for such a determination, or any rationale for denial.

Filing 1 at 6 (¶ 28). Somewhat more specifically, the Petition alleges,

> At 3:43 p.m. Central Time on July 28, 2026, ICE Associate Regional Counsel Joshua Sleper advised counsel by email that he had been told "the Stay is denied and removal has been approved by ERO HQ." ICE supplied no written decision, no reason for the denial, no indication that USCIS had made a prima facie eligibility determination, and no indication that ICE requested such a determination before denying the stay and approving removal.

Filing 1 at 2–3 (¶ 5). Federal Respondents' declarant acknowledges that Trinh's U-Visa Application was received by USCIS on July 28, 2026, and that Trinh submitted an application for a Stay of Removal that was denied on July 27, 2026. Filing 25 at 4–5 (¶ 25).

## B. Procedural Background

### *1. Trinh's Petition for Writ of Habeas Corpus*

On July 28, 2026, while Trinh was in transit to Alexandria for his removal flight to Vietnam, Trinh's counsel filed his Verified Petition for Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2241. Filing 1. As mentioned at the outset of this Memorandum and Order, the Petition explains,

> Petitioner does not challenge the validity of his final removal order. He challenges collateral agency conduct: denying his stay request and approving immediate removal without the statutory prima facie process required for a pending U petition, without any reasoned explanation permitting review of statutory compliance, and contrary to operative classwide relief.

Filing 1 at 3 (¶ 8).

In Count One of his Petition, Trinh asserts "Violation of 5 U.S.C. § 705 Stay and Operative Classwide Relief." Filing 1 at 6. This claim alleges that Respondents denied his stay and approved his removal in violation of the procedures in 8 U.S.C. § 1227(d)(1) and the stay in *ICWC*, 2026 WL 1455004. Filing 1 at 6–7 (¶ 32). In Count Two, Trinh asserts "Administrative Procedure Act - Contrary to Law and Arbitrary and Capricious Action." Filing 1 at 7. This claim alleges that denial of his request for a stay under § 1227(d)(1) was contrary to law, in excess of statutory authority, and arbitrary and capricious under 5 U.S.C. § 706(2)(A) and (C). Filing 1 at 7 (¶ 33). In Count Three, Trinh asserts "Fifth Amendment Procedural Due Process." Filing 1 at 7. This claim alleges that Respondents' actions with regard to his request for a stay of removal "depriv[ed] him of a meaningful opportunity to invoke the protection Congress provided" in § 1227(d)(1). Filing 1 at 7 (¶ 34).

Trinh prays for various kinds of relief, including a request that the Court "immediately enjoin Respondents and all persons acting in concert with them from physically removing Petitioner from the United States." Filing 1 at 7–8 (Prayer for Relief). He does not seek release as relief. Filing 1 *passim*.

*2. The First and Second Motions for TRO and Interim Orders*

At the time Trinh's counsel filed his Petition, counsel did not know Trinh's location. Filing 1 at 2 (¶ 1). That same day, Trinh's counsel also filed Trinh's First Motion for TRO. Filing 2. In

that First Motion for TRO, Trinh asks the Court to order relief similar to or overlapping with relief requested in the Prayer in his Petition, with the addition of a request for an order "requiring Respondents immediately to transmit the [temporary restraining] order to all officers, contractors, carriers, facilities, and removal personnel responsible for Petitioner." Filing 2 at 2 (request for an order).

The case was assigned to the undersigned on July 29, 2026, and that same day the Court filed an Order to Show Cause Why Case Should Not Be Dismissed for a Defect in Venue and/or Jurisdiction, in light of the Supreme Court's decision in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Filing 7 at. 2. The Court explained that its search for Trinh's location on ICE's Online Detainee Locator System, https://locator.ice.gov/odls/#/details, showed that Trinh was then detained in the ERO El Paso East Montana ICE detention facility in El Paso, Texas. Filing 7 at 2. Thus, the Court observed, "[U]nder *Padilla*, it appears that Trinh's Petition does not name the correct physical custodian as a respondent and should have been brought in the United States District Court for the Western District of Texas, not in this Court." Filing 7 at 2. Consequently, the Court set July 30, 2026, as the deadline for Trinh to show cause why this case should not be dismissed pursuant to 28 U.S.C. § 1404(a) and/or 28 U.S.C. § 1631. Filing 7 at 3.

On July 30, 2026, Trinh filed a Response then filed a Corrected Response to the Court's Order to Show Cause. Filing 10; Filing 11. Trinh argued in essence that "this case falls squarely within the exception recognized in *Padilla* for situations in which 'a prisoner is held in an undisclosed location by an unknown custodian,' making application of the ordinary district-of-confinement rule impossible." Filing 11 at 3 (citing *Padilla*, 542 U.S. at 450 n.18). On July 31, 2026, Trinh also filed his Second Motion for TRO. Filing 16. In his Second Motion for TRO, Trinh

requested that the Court provide some of the same relief set out in the Prayer in the Petition with some additional relief. Filing 16 at 3.

On July 31, 2026, based on Trinh's response and corrected response to the Court's Order to Show Cause, the Court re-ran its search on ICE's Online Detainee Locator System, which indicated "Search Results: 0." Filing 18. Thus, the Court concluded that it was not clear where Trinh was then detained and who was then his physical custodian. Filing 18 at 2. Consequently, the Court entered its Order for Response by Respondents, in which the Court directed that not later than August 3, 2026, "Respondent shall provide the Court with a statement illustrating Petitioner's location(s) and physical custodian(s) from July 28, 2026, through August 3, 2026, records relating to the same, as well as a statement of ICE's intentions as to relocating Petitioner in the foreseeable future." Filing 18.

On August 3, 2026, Federal Respondents filed their Statement Concerning Petitioner's Location, Filing 20, accompanied by a Declaration of Deportation Officer Jarrett Venters, Filing 21. Federal Respondents explained that Trinh was then in ICE custody in El Paso, Texas, but that ICE planned to move Trinh back to the McCook Detention Center on August 4, 2026. Filing 20 at 1. Federal Respondents stated, "Once there, ICE does not plan to move him or plan another removal flight until this habeas matter has concluded." Filing 20. DO Venters's declaration provided a detailed chronology of Trinh's location and custody from July 28, 2026, through August 3, 2026, along with similar statements about intent to return Trinh to the McCook Detention Center via Omaha on August 4, 2026. Filing 21 at 3–4 (¶¶ 11–19). DO Venters also averred, "Petitioner will remain detained at the McCook ICE IGSA facility in McCook, NE until another flight becomes available; whether that be a charter or commercial flight. But in any event ICE, does not plan to move Petitioner while this habeas action is pending." Filing 21 at 4.

The State Respondent also filed a Response on August 3, 2026. Filing 22. The essential part of that Response was the following:

> Warden states that Petitioner was detained at the McCook Detention Center/Work Ethic Camp from June 3, 2026, to July 28, 2026. Given the available limited information, sometime on July 28, 2026, ICE took custody of Petitioner and removed him from the McCook Detention Center.

Filing 22 at 2 (¶ 5).

*3. The Order to Show Cause and Responses*

On August 4, 2026, the Court entered an Order to Show Cause Why Petition Should Not Be Granted and for Responses to Motions for Temporary Restraining Orders. Filing 23. In the Order to Show Cause, the Court first took note of the Respondents' Responses to its prior Order for information about Trinh's location and custodian. Filing 23 at 1–2. The Court then explained,

> The Court is satisfied that because Trinh's last known location at the time he filed his Petition was in this District and because the Federal Respondent represents that Trinh will today be returned to this District and remain here unit this habeas matter has concluded, this Court has jurisdiction over this matter. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Therefore, the Court will establish deadlines for Respondents' Returns in response to Trinh's Petition and briefing deadlines for responses to Trinh's two Motions for Temporary Restraining Orders now pending before the Court. Filing 1; Filing 2; Filing 16.

Filing 23 at 2. The Court also stated, "Although the Court is not entirely convinced that any or all of Trinh's claims are cognizable under § 2241, the Court will direct compliance with the procedures for habeas actions to determine that and other relevant issues." Filing 23 at 4.

Therefore, the Court set a deadline of August 6, 2026, for Respondents to make separate Returns certifying the true cause of Trinh's detention and why his Petition should not be granted and to make separate or joint responses to Trinh's Motions for TROs. Filing 23 at 6 (¶ 1). The Court set a deadline of August 7, 2026, for Trinh's Replies, if any. Filing 23 at 6 (¶ 2). The Court then stated, "Upon the filing of Respondents' Return(s) and Responses and Trinh's replies, if any,

the Court will determine whether or not to set a hearing on the pending matters prior to disposition." Filing 23 at 6.

On August 4, 2026, the State Respondent filed a Return stating the following:

> From reading the Petition for Writ of Habeas Corpus ("Petition") (Doc. No. 1), it is Warden's understanding that she is only made a party to this action because Petitioner Thien Quoc Trinh ("Petitioner") is currently detained at the McCook ICE Detention Center in McCook, Nebraska, which is the subject of an Inter-Governmental Service Agreement ("IGSA") between Nebraska Department of Correctional Services, the U.S. Department of Homeland Security ("DHS") and the U.S. Immigration and Customs Enforcement ("ICE"). (Doc. No. 1). Accordingly, Warden does not take a position on the substantive issues raised in the Petition, nor does Warden take a position on whether Petitioner's writ should or should not be granted.

Filing 24 at 1–2. Federal Respondents' August 4, 2026, Return was more substantial, arguing the merits of the pending matters with a supporting Index and another Declaration of DO Jarrett Venters. Filing 25; Filing 26; Filing 27. On August 7, 2026, Trinh filed a Reply Brief, Declaration, and Index. Filing 28; Filing 29; Filing 30. On August 7, 2026, Trinh also filed a Motion for Oral Argument. Filing 31.

## II. LEGAL ANALYSIS

### A. The Motion for Oral Argument

The Court begins its legal analysis with the last motion filed, Trinh's Motion for Oral Argument. Filing 31. In support of his request, Trinh argues,

> The parties' disagreement is no longer primarily factual. It concerns the identification of the agency action under review, the scope of the administrative record, and the legal effect of Respondents' failure to identify the determinations Petitioner contends were required before the challenged stay decision was made.

Filing 31 at 2. He asserts that oral argument is necessary to determine whether Federal Respondents' actions or determinations with regard to a stay under § 1227(d)(1) "actually occurred and, if so, where they are reflected in the administrative record." Filing 31 at 2. He argues further that oral argument is appropriate to clarify Federal Respondents' purportedly mistaken notion that

the case is about an application for a stay submitted on June 12, 2026, and denied on July 27, 2026, when it is about Trinh's request presented on July 27 and 28, 2026, invoking his pending U-visa petition, his request for a § 1227(d)(1) stay, and his membership in the classes certified in *ICWC*. Filing 31 at 2. Trinh contends that disagreement "shapes every jurisdictional argument in the Return," and oral argument would allow the Court to resolve it efficiently. Filing 31 at 2. Trinh also argues that despite Federal Respondents' "voluntary pause" on his removal, Federal Respondents continue to defend the denial of the stay, so that oral argument would allow the Court to address the scope and duration of any relief in this "time-sensitive" matter. Filing 31 at 3. Lastly, Trinh argues that oral argument will clarify the status of Federal Respondents' decision-making process on his request for a stay and consequently narrow the questions the Court must address. Filing 31 at 3.

The Court agrees with Trinh's assertion that the parties' disagreement is not primarily factual—indeed, in the Court's view, the dispute has always been primarily legal. The Court does not find oral argument necessary to resolve any of the issues that Trinh asserts will be clarified by oral argument. In fact, the Court concludes that oral argument will delay rather than expedite the disposition of this matter. After reviewing the parties' written submissions, the Court concludes that neither an evidentiary hearing nor oral argument is required because a conclusion can be reached on the legal issues presented. Also, the dispositive facts are undisputed—or if the facts alleged are disputed, non-speculative, non-conclusory, and taken as true, they fail to state a claim for habeas relief. *See Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072 (8th Cir. 1988))). Therefore, the Court will consider

Trinh's Petition on the parties' written submissions without an evidentiary hearing or oral argument.

Trinh's Motion for Oral Argument is denied.

**B. The Motions for Temporary Restraining Orders**

The Court turns next to Trinh's Motions for TROs. The Court will resolve these Motions before turning to the merits of Trinh's Petition because the Motions for TROs improperly seek the ultimate relief sought in Trinh's Petition and—perhaps more importantly—they seek relief that is now moot and/or unavailable.

*1. The Parties' Arguments*

Trinh originally asserted that his First Motion for TRO was necessary to preserve the status quo long enough for this Court to enforce the governing statute and operative relief. Filing 2-1 at 2. In his Second Motion for TRO, Trinh sought an order that would "temporarily restrain Petitioner's removal and order Respondents to disclose his location and custodial status." Filing 16-1 at 1. Again, Trinh asserted that such a TRO was necessary to maintain the status quo while the Court determined its jurisdiction. Filing 16-1 at 1.

Federal Respondents assert that Trinh's First Motion for TRO should be denied as moot because it seeks the same relief as the Petition itself. Filing 25 at 2, 24. Federal Respondents argue further that the First Motion for TRO should be denied because Federal Respondents have assured the Court that Trinh will not be moved until the Court decides the merits of the Petition, so the requested relief is moot. Filing 25 at 2, 24. Federal Respondents assert that the Second Motion for TRO is "plainly moot" because Trinh's location has been disclosed and the Court has resolved the first jurisdictional issues regarding Trinh's location and physical custodian. Filing 25 at 2, 23.

In reply, Trinh acknowledges that circumstances have changed since he filed his Motions for TROs. He states that he "does not oppose denial of the second Motion (Filing 16) as moot"

because his location has been disclosed and the Court has resolved the question of its jurisdiction that the Second Motion for TRO was intended to address. Filing 28 at 15. However, he contends that the request to restrain his removal in the First Motion for TRO remains "live." Filing 28 at 15. He argues that "a litigation representation of present intent [not to remove him while the habeas case is pending] is not the same as an enforceable order restraining removal." Filing 28 at 15. He asserts that Federal Respondents' representations only defer removal but do not abandon it. Filing 28 at 15. He also argues that the duration of any pause on removal is "undefined" specifically because it does not indicate whether the pause will continue through any appeal and adjudication of any request for a stay pending appeal, where Federal Respondents have not answered his request for clarification of those issues. Filing 28 at 15–16. Trinh also argues that Federal Respondents' representation does not satisfy the standards for a "voluntary cessation" that would moot the controversy. Filing 28 at 17.

2. *Standards for Mootness of Injunctive Relief*

A case—or a request for injunctive relief—"becomes moot and the court loses its jurisdiction when such a dispute ceases to exist, as when plaintiffs no longer have a personal stake in the outcome." *Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1019 (8th Cir. 2025) (cleaned up). For example, "the appeal of an order denying a preliminary injunction becomes moot if the act sought to be enjoined has occurred." *Bierman v. Dayton*, 817 F.3d 1070, 1072 (8th Cir. 2016) (quoting *Bacon v. Neer*, 631 F.3d 875, 877 (8th Cir. 2011)). The same is true of a motion for injunctive relief in district court where the passage of time, acts of parties or third parties, and other circumstances may moot the relief requested. *See Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044 (8th Cir. 2022) (passage of time while COVID-19 ran its course mooted injunctive relief); *see also Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.*, 179 F.3d 1095, 1099 (8th Cir. 1999) ("Through the passage of time and the occurrence of irrevocable events, disputes may disappear

so that federal courts no longer can grant effective relief." (quoting *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992)). In other words, "[r]esolution of mootness . . . requires attention to a case's particular circumstances. . . ." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 726 (8th Cir. 2022).

However, "a defendant cannot always moot a case simply by voluntarily ceasing its unlawful conduct after the plaintiff files suit." *Twin Cities Safety*, 139 F.4th at 1020 (quoting *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021)); *see also Revenue Mgmt. Sols., LLC v. Com. Bank*, No. 25-3159, 2026 WL 2121783, at *5 (8th Cir. July 23, 2026) (explaining that a voluntary cessation of a challenged practice does not moot a request for preliminary injunction, but a court does not abuse its discretion by considering a voluntary pause in determining the balance of the equities (citing cases)). A plaintiff may also be able to continue to seek injunctive relief if the harm "is capable of repetition yet evading review." *Twin Cities Safety*, 139 F.4th at 1020 (quoting *Noem v. Haaland*, 41 F.4th 1013, 1016 (8th Cir. 2022)). On the other hand, where the parties do not indicate any planned renewal of the challenged action, the party seeking injunctive relief has not demonstrated a reasonable expectation that the challenged action will recur. *Id.*

### 3. *The Motions for Temporary Restraining Orders Do Not Warrant Relief*

#### a. Trinh Acknowledges the Second Motion for TRO Is Mooted by Changed Circumstances

The Second Motion for TRO asks the Court to provide the following relief:

> A. Enter an order temporarily restraining Respondents, and all persons acting in concert with them, from removing Petitioner from the United States pending the Court's resolution of the jurisdictional issues raised in its Order to Show Cause;
>
> B. Order Respondents to file, within twenty-four hours of entry of the order, a notice stating (i) Petitioner's current physical location; (ii) Petitioner's immediate custodian; (iii) Petitioner's current custodial status; and (iv) whether Petitioner has been removed from the United States or is presently scheduled for removal;

C. Waive the security requirement of Federal Rule of Civil Procedure 65(c); and

D. Grant such other and further relief as the Court deems just and proper.

Filing 16 at 3.

Trinh acknowledges in his reply that the Second Motion for TRO is now moot because his location has been disclosed and the Court has resolved the question of its jurisdiction that the Second Motion for TRO addressed. Filing 28 at 15 (stating that Trinh "does not oppose denial of the second Motion (Filing 16) as moot"). The Court required and the Respondents provided the same information that Trinh sought in paragraph B. of the prayer in the Second Motion for TRO. Filing 18; Filing 20; Filing 22. Even if circumstances at one time might have made that relief available, the passage of time and the changes of circumstances make such relief ineffective at this point. *See Arc of Iowa*, 33 F.4th at 1044; *Bierman*, 817 F.3d at 1072; *Lebanon Chem. Corp.*, 179 F.3d at 1099. Moreover, it is not clear to the Court that providing injunctive relief requiring Respondents to provide the information about Trinh's location and custody would have been appropriate. "Requiring [the defendant] to take affirmative action . . . before th[e] issue has been decided on the merits goes beyond the purpose of a preliminary injunction [or temporary restraining order]." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022) (quoting *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993)). The Court did not require the Respondents to provide that information by way of a temporary restraining order but by way of an Order necessary to the determination of the Court's jurisdiction.

Notwithstanding Trinh's statement that the Second Motion for TRO is entirely moot, the Court concludes that the Second Motion for TRO is not moot to the extent that it seeks an order temporarily restraining Respondents from removing Petitioner "pending the Court's resolution of the jurisdictional issues raised in its Order to Show Cause." Filing 2 at 2 (prayer paragraph A.).

The Court will address that issue in subsection c. below. Consequently, the Second Motion for TRO is denied as moot to the extent that it sought information about Trinh's location and custody that has now been provided, but that Motion remains "live" for the moment as to the requested stay of removal pending disposition of this case.

b. The First Motion for TRO Is Mooted by Changed Circumstances and this Memorandum and Order

In his First Motion for TRO, Trinh asks the Court to enter an Order providing the following relief:

1. enjoining Respondents and all persons acting in concert with them from physically removing Petitioner from the United States;

2. requiring immediate disclosure of his location, present custodian, itinerary, and any scheduled international departure;

3. enjoining any further transfer that would frustrate jurisdiction or materially interfere with access to counsel;

4. requiring Respondents immediately to transmit the order to all officers, contractors, carriers, facilities, and removal personnel responsible for Petitioner;

5. directing Respondents to show cause on the shortest practicable schedule why habeas and preliminary injunctive relief should not issue;

6. waiving security under Rule 65(c); and

7. granting other appropriate relief.

Filing 2 at 2 (request for an order).

As the Court explained above in § I.B.2, this First Motion for TRO asks the Court to order relief similar to or overlapping with relief requested in Trinh's Petition. The Court now explains more specifically that the First Motion for TRO requests relief similar to or overlapping with the relief requested in paragraphs a through f and h of the Prayer in Trinh's Petition. *Compare* Filing 2 at 2, *with* Filing 1 at 7–8. The only significant differences is omission of paragraph g of the Prayer in his Petition and addition of a request for an order "requiring Respondents immediately

to transmit the [temporary restraining] order to all officers, contractors, carriers, facilities, and removal personnel responsible for Petitioner." Filing 2 at 2 (request for an order). The purpose of a temporary restraining order or preliminary injunction "is not to give the movant the ultimate relief he seeks." *Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023). Thus, to the extent that the relief requested in the First Motion for TRO overlaps the relief requested in the Petition, it is denied as improper. This conclusion applies specifically the paragraphs 1, 2, 3, 5, 6, and 7.

Also, the First Motion for TRO is plainly moot as to the relief requested in paragraphs 2 and 5, because the information requested in those paragraphs has been provided in response to the Court's prior Order. *See* Filing 18; Filing 20; Filing 22; *see also Arc of Iowa*, 33 F.4th at 1044; *Bierman*, 817 F.3d at 1072; *Lebanon Chem. Corp.*, 179 F.3d at 1099. The relief requested in paragraph 4 is also moot because there is no order on the Second Motion for TRO to transmit where the relief sought is otherwise improper or moot and no temporary restraining order will issue.

Thus, the First Motion for TRO does not seek relief that is both proper and not moot.

c. Restraining Respondents from Removing or Transferring Petitioner Is Not Appropriate under Present Circumstances

Nevertheless, Trinh argues that his request to restrain his removal remains "live." The Court notes that the First Motion for TRO asks the Court to enter an Order *inter alia* "enjoining Respondents and all persons acting in concert with them from physically removing Petitioner from the United States" and "enjoining any further transfer that would frustrate jurisdiction or materially interfere with access to counsel." Filing 2 at 2 (prayer, ¶¶ 1, 3). Trinh seeks similar—but not identical—relief in the Second Motion for TRO in which he requests that the Court "[e]nter an order temporarily restraining Respondents, and all persons acting in concert with them, from removing Petitioner from the United States pending the Court's resolution of the jurisdictional

issues raised in its Order to Show Cause." Filing 16 at 3 (prayer, ¶ A). The concern on which Trinh bases his argument that restraint on his removal is "live" is that Federal Respondents have only represented that they will not move or remove him while this habeas action is pending, but such a voluntary and "undefined" pause does not eliminate the need for relief. Filing 28 at 15. That argument relates to the requests in paragraph A. of the prayer in his Second Motion for TRO and the request in paragraph 3 of the prayer in the First Motion for TRO. As pointed out above, the request in paragraph 1 of the First Motion for TRO improperly seeks the same relief as the Petition because the requested restraint on removal is stated without a time limitation to the pendency of this habeas case.

Trinh is correct that Federal Respondents' representation that they will not remove him during the pendency of the action may not be enough to moot the issue. "[A] defendant cannot always moot a case simply by voluntarily ceasing its unlawful conduct after the plaintiff files suit." *Twin Cities Safety*, 139 F.4th at 1020 (citation omitted); *see also Revenue Mgmt. Sols., LLC*, 2026 WL 2121783, at *5. Trinh also seems to suggest that relying on Federal Respondents' representations could result in a repetition of attempts to transfer or remove him while the habeas case is pending that would evade review, particularly as Federal Respondents' representations are vague as to whether they encompass the time for any appeal. The Court finds that there is no indication of any planned renewal of efforts to transfer or remove Trinh during the pendency of the proceedings in this Court. *See Twin Cities Safety*, 139 F.4th at 1020. Nevertheless, the Court will consider the matter further.

The Court concludes that the request for restraint on removal or transfer during the pendency of this case is mooted by this Memorandum and Order ultimately denying any habeas relief at all. Under these circumstances, the Court cannot now provide effective relief. *See Arc of*

*Iowa*, 33 F.4th at 1044; *Lebanon Chem. Corp.*, 179 F.3d at 1099. Just as importantly, the Court concludes that any request for this specific relief is precluded by this decision because this decision necessarily embodies the conclusion that Trinh could not satisfy the "likelihood of success" requirement to obtain a temporary restraining order. *See, e.g.*, *Schmitt v. Rebertus*, 148 F.4th 958, 966 (8th Cir. 2025) (explaining that probability or likelihood of success is the most significant factor in determining whether to grant a temporary restraining order or preliminary injunction). Trinh has not met the requirements for any injunctive relief, so the Court will grant none. Upon entry of this decision, this case will no longer be pending. The Court is aware of no legal or other impediment preventing the immediate removal of the Defendant from the United States upon entry of this order.

*4. Summary*

For the reasons stated above, both Trinh's First Motion for TRO and his Second Motion for TRO are denied in their entirety.

**C. The Petition for Habeas Corpus Relief**

The Court turns next to Trinh's Petition for Writ of Habeas Corpus. The Court will first consider the issues raised by the Court's observation that it was "not entirely convinced that any or all of Trinh's claims are cognizable under § 2241." Filing 23 at 4. If the Court's concerns are justified, that may be the end of the Court's consideration of Trinh's Petition. The parties dispute whether the Court's concerns are justified.

*1. The Parties' Arguments*

Federal Respondents argue that the Petition should be denied because none of the relief it seeks relates to a challenge to Trinh's detention. Filing 25 at 2. Federal Respondents contend that habeas relief under 8 U.S.C. § 2241(c)(3) is confined to petitions challenging custody in violation of the Constitution, laws, or treaties of the United States, and that habeas at its core is a remedy

for unlawful detention. Filing 25 at 2. Thus, Federal Respondents argue that Trinh's Petition is subject to dismissal for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Filing 25 at 10.

More specifically, Federal Respondents point out that each of Trinh's causes of action challenges the agency's decision to deny him a discretionary stay of removal under 8 U.S.C. § 1227(d)(1) and failure to follow the § 705 stay imposed for putative class members in *ICWC*, "but none of these causes of action challenge[s] the legality of Petitioner's detention." Filing 25 at 12. Federal Respondents contend that the forms of relief requested in the Petition prove this point because none demands Trinh's release. Filing 25 at 12. Federal Respondents contend that this is a "fatal flaw" in the Petition. Filing 25 at 13. They then point to case law demonstrating that the purpose of the writ of habeas corpus is to test the legality of a prisoner's current detention. Filing 25 at 13. Indeed, Federal Respondents argue that Trinh is attempting to "cloak" an ordinary civil lawsuit alleging unlawful agency action under the Administrative Procedure Act (APA) as a petition for a writ of habeas corpus. Filing 25 at 14. Thus, Federal Respondents argue that Trinh cannot show that he falls into one of the categories listed in § 2241(c). Filing 25 at 14.

Trinh asserts that the "whole of the relief" that he seeks is this: (1) requiring Respondents to obtain from USCIS a determination of prima facie eligibility for a U visa that 8 U.S.C. § 1227(d)(1) makes a precondition to deciding a request to stay removal; (2) setting aside the denial of his stay request as legally incomplete and ordering reconsideration; and (3) barring his removal while the reconsideration occurs. Filing 28 at 1. Trinh states that he is not asking the Court to grant the stay, decide his eligibility for a U visa, or displace any judgment that Congress committed to the agency. Filing 28 at 1–2. Indeed, he states, "Petitioner asks that the process be respected and that USCIS be permitted to engage with the evidence." Filing 28 at 2. He contends that Federal

Respondents mischaracterize his Petition as seeking a court order granting him a discretionary stay of removal, but he contends that the agency action at issue is "failure to obtain a statutorily required determination before deciding a request [for a stay of removal that] Respondents have not addressed." Filing 28 at 3.

Trinh argues further that the Petition challenges custody and the certified cause of that custody is removability. Filing 28 at 6. He points out that Count One alleges that Respondents "denied his stay and approved removal without a prima facie determination and under the policy stayed by the ICWC court," and further that "[c]ustody maintained for that unlawful purpose is contrary to federal law." Filing 28 at 6. Trinh argues that Federal Respondents' assertion that none of his causes of action challenge the legality of his detention is flawed because it "reads the Prayer for Relief rather than the claims." Filing 28 at 6. He then argues that Federal Respondents tied his custody to removability because ICE revoked his release under 8 C.F.R. § 241.13(i) on the basis of changed circumstances making removal likely but never addressed the "conduct" and "dangerousness" grounds for revocation. Filing 28 at 6. In short, he argues, "Whether removal may lawfully proceed is not collateral to that custody; it is its premise." Filing 28 at 6. Trinh also contends that the remedy he seeks is the ordinary remedy for an incomplete agency decision, which he contends can be entertained in a habeas action. Filing 28 at 7–8.

*2. Standards for Habeas Relief under 28 U.S.C. § 2241*

The habeas statute at issue here, 28 U.S.C. § 2241, provides in pertinent part as follows:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
>
> * * *
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless--

> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
>
> (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
>
> (5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(a), (c). "[A] habeas court is 'not bound in every case' to issue the writ." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Instead, "[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id.* (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court).

As the United States Supreme Court explained, "In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (quoting 62 Stat 869, 964–65). The Supreme Court explained further, "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in the original).

The core concern of habeas as a means to challenge detention is apparent from the language of § 2241. Under the statute, the writ does not extend to a prisoner unless he or she falls into one

of the categories listed in § 2241(c). *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless" the prisoner falls into one of the listed categories). One such category—and the only one at issue here—is that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on a district court jurisdiction to hear habeas corpus challenges by aliens to the legality of their detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). "The typical remedy for such detention [under § 2241(c)(3)] is, of course, release." *Munaf*, 553 U.S. at 693 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), which states, "[T]he traditional function of the writ is to secure release from illegal custody").

3. *Trinh's Claims Are Outside the Scope of § 2241*

The Court concludes that examination of Trinh's claims and the relief he seeks in his Petition demonstrate that the Petition falls outside the scope of a writ of habeas corpus pursuant to § 2241.

a. Trinh's Claims Do Not Challenge His Detention

The Court agrees with Federal Respondents that none of Trinh's causes of action in his Petition challenges the legality of his detention; rather, each challenges the agency decision to deny him a discretionary stay of removal under 8 U.S.C. § 1227(d)(1) and/or denial of a stay pursuant to 5 U.S.C. § 705, a provision of the Administrative Procedure Act, as imposed by the *ICWC* court as to putative class members.

i. Count One Challenges Denial of a Stay of Removal Not Custody in Violation of Federal Law

Count One asserts "Violation of 5 U.S.C. § 705 Stay and Operative Classwide Relief." Filing 1 at 6. This Count alleges that "Respondents denied [Trinh's] stay and approved removal without a prima facie determination and under the policy stayed by the ICWC court." Filing 1 at 6–7 (¶ 32). The "prima facie determination" to which Trinh refers is the part of § 1227(d)(1) that provides for the Secretary for Homeland Security to determine "[i]f . . . an application for nonimmigrant status under subparagraph (T) or (U) of section 1101(a)(15) of this title filed for an alien in the United States sets forth a prima facie case for approval . . . ." 8 U.S.C. § 1227(d)(1). If the Secretary determines that the application does set forth a prima facie case for approval of U or T status, "the Secretary may grant the alien an administrative stay of a final order of removal under section 1231(c)(2) of this title. . . ." *Id.* Similarly, 5 U.S.C. § 705, a provision of the Administrative Procedure Act (APA) states, "When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review." 5 U.S.C. § 705. In the *ICWC* case, a federal district court relied on § 705 to stay three ICE policies as to putative class members facing removal pending the conclusion of the administrative review procedures. *ICWC*, 2026 WL 1455004, at *46.

Count One does not challenge Trinh's detention pending removal as "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Indeed, his detention is not even mentioned in that Count. Instead, Count One challenges compliance with a statute providing for a stay of removal that is likewise silent as to custody during removal. *See* 8 U.S.C. § 1227(d)(1). It also challenges ICE's compliance with a non-final court order of a district court imposing a preliminary stay on agency action but silent as to custody. *ICWC*, 2026 WL 1455004, at *46 (citing 5 U.S.C. § 705).

Trinh's response is a tortured argument based on strained reasoning. He contends that Count One includes an allegation that "[c]ustody maintained for that unlawful purpose is contrary to federal law," which he contends is contrary to Federal Respondents' assertions about the claim. Filing 28 at 6. The cited allegation is non sequitur to the preceding allegation, which made no mention of "custody" or "purpose" of any kind. *See* Filing 1 at 6–7 (¶ 32) ("Respondents denied his stay and approved removal without a prima facie determination and under the policy stayed by the ICWC court."). Thus, this allegation begs the question, what does Trinh mean by "[c]ustody maintained for that unlawful purpose"? Trinh cannot mean "custody" for the "purpose" of removing him, because he expressly disclaimed in his Petition any "challenge [to] the validity of his final removal order," Filing 1 at 3 (¶ 8), and his removal necessarily involved his detention pending removal. *See* 8 U.S.C. § 1231; *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (explaining that § 1231 "governs the detention, release, and removal of individuals 'ordered removed'" and noting that the statute provides "that the Government 'shall' detain noncitizens during the statutory removal period" (quoting 8 U.S.C. § 1231)). Nothing in a stay of removal pursuant to either § 1227(d)(1) or 5 U.S.C. § 705 would change Trinh's custody only whether he can be removed immediately. Merely mouthing the words "custody maintained for that unlawful purpose is contrary to federal law" is not enough to invoke § 2241(c)(3). At the very least, there must be some factual or legal basis for claiming that custody was maintained for an unlawful purpose, but none is apparent here.

Equally unavailing is Trinh's companion argument that his custody is tied to removability. Filing 28 at 6. Trinh asserts, "Whether removal may lawfully proceed is not collateral to that custody; it is its premise." Filing 28 at 6. The problem with this assertion is that Trinh has been lawfully ordered removed, so that removal may lawfully proceed and his custody pending removal

can be and would be maintained under 8 U.S.C. § 1231, even if the stay on removal was improperly denied on procedural grounds.

This claim simply does not challenge Trinh's detention as unlawful.

ii. Count Two Challenges Administrative Action Not Custody in Violation of Federal Law

Count Two of Trinh's Petition asserts arbitrary and capricious action by Federal Respondents in violation of the APA. Filing 1 at 7. The specific supporting allegation states the following:

> Under 8 U.S.C. § 1227(d)(1), the Secretary must determine whether a pending U petition sets forth a prima facie case before deciding an administrative stay request. Respondents denied the request and approved removal without identifying or obtaining that determination. The unexplained denial provides no basis to conclude that Respondents considered the governing statute or evidence and is contrary to law, in excess of statutory authority, and arbitrary and capricious under 5 U.S.C. § 706(2)(A) and (C).

Filing 1 at 7 (¶ 33). Again, this claim expressly challenges ICE's compliance with administrative procedures for a stay pursuant to 8 U.S.C. § 1227(d)(1), but it does not challenge Trinh's custody as allegedly in violation of federal law within the meaning of § 2241(c)(3). Indeed, the failure to comply with administrative procedures for a stay could not result in a change in Trinh's custody status for the reasons stated above and is not a challenge to the lawfulness of his custody. Trinh does not even attempt to twist this claim to fit within § 2241(c)(3). Filing 28 *passim.*

iii. Count Three Does Not Involve Deprivation of an Opportunity to Challenge Detention

Count Three asserts a violation of Fifth Amendment Procedural Due Process. Filing 1 at 7. Again, the specific allegation supporting this claim states the following:

> Respondents approved immediate removal without notice of the basis for denial [of a stay on removal] and without the statutory procedure governing his pending petition and stay request, depriving him of a meaningful opportunity to invoke the protection Congress provided.

Filing 1 at 7 (¶ 34). Because Trinh does not "challenge the validity of his final removal order," Filing 1 at 3 (¶ 8), the "meaningful opportunity to invoke the protection Congress provided" must mean the opportunity to seek a discretionary stay of removal pursuant to § 1227(d)(1). Again, the opportunity to seek a stay of removal cannot and would not change the legality of Trinh's detention. Again, Trinh does not even attempt to twist this claim to fit within § 2241(c)(3). Filing 28 *passim*.

b. Trinh's Petition Seeks Relief that Falls Outside the Scope of § 2241(c)(3)

Trinh's failure to seek relief provided by § 2241 is just as important as Trinh's failure to state claims that challenge his detention.

i. Habeas Corpus Relief Is about Release from Unlawful Detention

Federal Respondents assert that "none of Trinh's stated relief seeks to challenge his detention." Filing 25 at 12 (citing Filing 1 at 7–8 (prayer)). Trinh contends that Federal Respondents improperly read the Prayer for Relief in his Petition rather than the Claim to support their contention that none of his causes of action challenge the legality of his detention. Filing 28 at 6. Trinh's contention misses the point that whether a habeas claim is cognizable is about the relief requested. In *Munaf*, the Supreme Court stated, "At the outset, the nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate in these cases." *Munaf*, 553 U.S. at 693. Likewise, the Supreme Court stated in *Thuraissigiam*, "Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." 591 U.S. at 107 (emphasis in original).

ii. Trinh Does Not Seek Relief that Is Cognizable under § 2241

Trinh's Petition founders on Trinh's own characterization of the relief that he seeks. Trinh argues,

> Petitioner asks this Court to order three things. First, that Respondents obtain from U.S. Citizenship and Immigration Services the determination of prima

> facie eligibility that 8 U.S.C. § 1227(d)(1) makes a precondition to deciding a stay request. Second, that the denial of his stay request be set aside as legally incomplete and reconsidered under the framework now in force, on a record that includes that determination. Third, that Petitioner not be removed while that occurs.
>
> That is the whole of the relief sought. The Court is not asked to grant the stay, to decide Petitioner's eligibility for U nonimmigrant status, or to displace any judgment Congress committed to the agency. Petitioner asks that the process be respected and that USCIS be permitted to engage with the evidence.

Filing 28 at 1. None of that relief includes Trinh's release from unlawful detention, as required to fall within § 2241(c)(3) and thus none of it establishes a cognizable claim for habeas relief. *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless" the prisoner falls into one of the listed categories, including in this case only detention in violation of federal law in § 2241(c)(3)); *see also Munaf*, 553 U.S. at 693 ("The typical remedy for such detention [under § 2241(c)(3)] is, of course, release."); *Preiser*, 411 U.S. at 484 ("[T]he traditional function of the writ is to secure release from illegal custody").

In *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), the Supreme Court considered a habeas action brought by an alien seeking asylum who had been ordered removed. The Supreme Court observed that "respondent's use of the writ would have been unrecognizable" at the time that the Constitution was drafted and ratified. *Thuraissigiam*, 591 U.S. at 107. The Supreme Court explained, "Habeas has traditionally been a means to secure *release* from unlawful detention, but respondent invokes the writ to achieve an entirely different end, namely, to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country." *Id*. For that reason, the Supreme Court concluded "the relief requested falls outside the scope of the writ as it was understood when the Constitution was adopted." *Id*. at 119. The same is true in this case. Trinh's use of the writ would also have been "unrecognizable" at the time that the Constitution was drafted and ratified. *Id*. at 107. Like the respondent in *Thuraissigian*, Trinh invokes the writ to achieve an entirely different end from

release from unlawful detention. *Id.* He seeks to obtain additional administrative review of agency action—in his case, he requests a stay of removal and ultimately reconsideration of that request for a stay of removal. *Cf. id.*; *see also* Filing 28 at 1.[6] Thus, Trinh's requested relief "falls outside the scope of the writ as it was understood when the Constitution was adopted." *Id.* at 119.

iii. The Supreme Court's Decision in *Munaf* Supports the Conclusion that Trinh's Claim Is Not Cognizable under § 2241

Trinh challenges Federal Respondents' reliance on the statement in *Munaf* that "[h]abeas is at its core a remedy for unlawful executive detention." Filing 28 at 7 (quoting Filing 25 at 2, 13, in turn quoting *Munaf*, 553 U.S. at 693). Trinh argues that the quoted sentence from *Munaf* appears in the Supreme Court's "merits" analysis, but Trinh contends that on what he calls "the jurisdictional question," the Supreme Court held that § 2241 reached petitions by American citizens who sought an injunction against transfer to another sovereign rather than release. Filing 28 at 7–8. Thus, Trinh contends that the Supreme Court in *Munaf* "found jurisdiction and then

[6] The same is true of the specific relief Trinh prays for in his Petition. to the extent that his requests for relief are not already moot in light of intervening circumstances and Court orders. Trinh asks the Court to provide the following relief:

a. immediately enjoin Respondents and all persons acting in concert with them from physically removing Petitioner from the United States;

b. require immediate disclosure of Petitioner's present location, custodian, itinerary, and scheduled international departure;

c. enjoin further transfer that would frustrate jurisdiction or materially interfere with access to counsel;

d. issue an order to show cause and require an expedited return;

e. set an expedited preliminary-injunction hearing;

f. waive security under Rule 65(c);

g. if necessary, order transfer rather than dismissal of any claim affected by the identity or location of the immediate custodian; and

h. grant such further relief as justice requires.

Filing 1 at 7–8 (Prayer for Relief). None of this requested relief seeks release from detention.

denied relief." Filing 28 at 7. Trinh misunderstands why *Munaf* demonstrates the deficiency that makes habeas relief unavailable in his case.

Trinh is not wrong that in *Munaf*, the Supreme Court first held that the federal courts have jurisdiction over American citizens held by American forces operating as multinational agents, because § 2241(c)(1) "makes clear that actual custody by the United States suffices for jurisdiction, even if that custody could be viewed as 'under . . . color of' another authority, such as the [Multinational Force–Iraq (MNF-I)]. *Munaf*, 553 U.S. at 686. That holding is of no moment here, because Trinh is not an American citizen held by American forces operating outside of the United States, but a non-citizen held by ICE in the United States. More importantly, Trinh's focus on "jurisdiction" is misplaced. Although Federal Respondents referred to dismissal for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the issue of the relief Trinh seeks is not one of jurisdiction under § 2241(c)(3) but one of cognizability of his claim as a claim for habeas relief. *See* Filing 25 at 12 (asserting that the Petition is "incognizable"); *see also* Filing 23 at 4 (stating "the Court is not entirely convinced that any or all of Trinh's claims are cognizable under § 2241").

Although the Supreme Court in *Munaf* did not use the word "cognizable," it rejected the petitioner's claims for habeas relief—despite having jurisdiction—on the ground that "the nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate in these cases" because "[h]abeas is at its core a remedy for unlawful executive detention." 553 U.S. at 693. The Supreme Court explained, "The typical remedy for such detention is, of course, release, . . . [b]ut here the last thing petitioners want is simple release." *Id.* (citations omitted). Instead, the Supreme Court observed, "At the end of the day, what petitioners are really after is a court order requiring the United States to shelter them from the sovereign government seeking to have them answer for

alleged crimes committed within that sovereign's borders." *Id.* The Supreme Court ultimately concluded that "petitioners state no claim in their habeas petitions for which relief can be granted, and those petitions should have been promptly dismissed." *Id.* at 705.

In short, contrary to Trinh's contentions, the Supreme Court's decision in *Munaf* demonstrates precisely why his Petition is not cognizable as a claim for habeas relief under § 2241. Trinh is not seeking "simple release"—indeed, he is not seeking release at all. *See id.* at 693. Instead, he is seeking relief that did not involve release from detention. *Id.*; *see also* Filing 1 at 3 (explaining that the nature of Trinh's challenge is to "collateral agency conduct"), 7–8 (praying for relief that does not include release from detention); Filing 28 at 1 (setting out "the whole of the relief sought" in Trinh's petition, which did not include release from detention). Thus, Trinh like the petitioners in *Munaf* states no claim in his habeas petition for which relief can be granted under § 2241 and his petition should be and is dismissed. *Munaf*, 553 U.S. at 705.

**D. The Court Need Not Reach Any Other Issues**

The Court's determination that Trinh fails to state a claim in his habeas petition for which relief can be granted—*i.e.*, that he fails to state a cognizable claim for relief under § 2241—makes it unnecessary for the Court to reach any other issues raised by the parties. Trinh's Petition is denied.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1. Petitioner Trinh's Motion for Leave to Substitute Corrected Response and, to the Extent Necessary, for Leave to File Corrected Response Out of Time, Filing 12, is granted;

2. Petitioner Trinh's Emergency Motion for Temporary Restraining Order and Order to Show Cause (First Motion for TRO), Filing 2, is denied in its entirety;

3. Petitioner Trinh's Emergency Motion for a Temporary Restraining Order Barring Removal and for an Order Requiring Respondents to Disclose Petitioner's Custodial Status (Second Motion for TRO), Filing 16, is denied in its entirety;

4 Petitioner Trinh's Motion for Oral Argument, Filing 31, is denied; and

5. Petitioner Trinh's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Filing 1, is denied.

Dated this 24th day of August, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge